**IN THE GENERAL COURT OF JUSTICE**
**FOR THE MIDDLE DISTRICT OF NORTH CAROLINA**
**Civil Action No.: 1:26-cv-841**

| | | |
|---|---|---|
| **LATRICE RICHARDSON,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **COMPLAINT** |
| | ) | |
| **FORSYTH COUNTRY CLUB,** | ) | |
| | ) | |
| **Defendant.** | ) | |

NOW COMES Plaintiff, Latrice Richardson, by and through counsel, and files this Complaint against Defendant Forsyth Country Club, alleging as follows:

**JURISDICTION AND VENUE**

1. Plaintiff has instituted this action pursuant to (a) Section 1981 of the Civil Rights Act of 1866, 42 U.S.C.A. § 1981, *et seq*., and (b) the common law of North Carolina. Plaintiff seeks to recover damages for the violation of her protected rights under federal and state law. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1367.

2. The acts complained of occurred within, and each party is a resident of the Middle District of North Carolina. Venue is therefore proper in this Court pursuant to 28 U.S.C. § 1391.

## PARTIES

3. Plaintiff Latrice Richardson ("Plaintiff") is a resident of Forsyth County, North Carolina, is a Black female, and at all times relevant was an "employee" of Defendant within the meaning and definition of 42 U.S.C.A. § 1981 and the common law of North Carolina.

4. Forsyth Country Club ("Defendant FCC") is a non-profit Corporation with a registered office and principal place of business in Winston-Salem, North Carolina, where it operates a country club. At times pertinent to this action, Defendant FCC was an "employer" of Plaintiff within the meaning and definition of 42 U.S.C.A. § 1981, and the common law of North Carolina.

5. Defendant FCC issued and was listed as the Plaintiff's employer on the Plaintiff's IRS Form W-2s for the year 2023.

## FACTS

6. Plaintiff is a Black female.

7. Plaintiff was hired by the Defendant on July 11, 2023, as a housekeeper, and worked second shift.

8. Plaintiff's duties in this role included cleaning restrooms, exercise rooms, the dance studio and cycle rooms, meeting areas, the golf club, and the pool area.

9. Plaintiff was also responsible for washing, drying, folding, and pressing laundry.

10. Plaintiff excelled in her role and met all reasonable expectations of her position.

11. Plaintiff's direct supervisor was Zach Crum, a White male housekeeping supervisor, and Plaintiff reported to him during her employment.

12. On second shift, Plaintiff also worked with Kristy Funkhouser, a White female housekeeper, a Hispanic female housekeeper (name unknown), and Maxwell Abrahms, a Jamaican male housekeeper.

**Racial Comments Directed at Plaintiff**

13. Almost immediately after being hired by the Defendant, in mid-July 2023, Plaintiff began to hear racist comments and experience discrimination based solely on her race.

14. Plaintiff witnessed a White front desk employee, Denise (last name unknown), call her "Queen Latifah" to her face because she did not know the Plaintiff's name, despite her repeatedly telling the employee her name. Another front desk employee, a male of Asian descent whose name was unknown, witnessed these comments.

15. The comments were offensive and made the Plaintiff uncomfortable, and she reported this to her supervisor, Mr. Crum, and Garrison Schmidt (White, female), the Human Resources Manager.

16. The Hispanic female employee moved to a different department after the White front desk employee, Denise, began making racial slurs directed at her.

17. On or about August 10, 2023, Plaintiff overheard Ms. Funkhouser call the Plaintiff a "nigger" over the phone.

18. The next day, on August 11, 2023, Plaintiff complained to Mr. Crum, yet again, of the offensive race-based comments and slurs. Mr. Crum was on vacation at the time and was not easily accessible. Mr. Crum dismissed Plaintiff's complaints and asked the Plaintiff if she wanted to "cordially quit."

19. Plaintiff responded that it was not her plan to resign, and she did not feel it was her responsibility to quit if she overheard and reported racial comments and asked that her employer provide her with a work environment free from racial discrimination.

20. As a result, Mr. Crum directed the Plaintiff to Ms. Schmidt in Human Resources.

21. The following day, on August 12, 2023, Plaintiff spoke with Ms. Schmidt to complain about the racial comments directed at her. Ms. Schmidt told Plaintiff to stay home from work, and she would handle the matter.

22. The Human Resources representative did not handle the matter, because approximately 2-3 days later, Plaintiff returned to work, and her work environment was uncomfortable and tense. The other employees refused to speak with her in retaliation for her complaining of race discrimination.

23. Ms. Funkhouser, who called Plaintiff a "nigger", and the White front desk employee, Denise, who called Plaintiff "Queen Latifah", both approached the Plaintiff and told her they were aware that she had complained about them in an attempt to intimidate her.

24. Plaintiff was labeled a troublemaker for filing her racial discrimination complaint.

25. Further, following the Plaintiff's complaint, Mr. Crum sent the Plaintiff home because Ms. Funkhouser stated that the Plaintiff was "intimidating" her.

26. On August 20, 2023, Plaintiff was given a new supervisor, Barron Morris, a Black male, housekeeping supervisor and Director of Environmental Services. During their initial meeting, Mr. Morris told Plaintiff that he was aware of her prior complaints of racism to human resources.

27. Over the next two weeks, despite having never received a write-up prior to complaining, Plaintiff began receiving write-ups for baseless actions. For example, on or about August 28, 2023, Plaintiff received an email saying that there would be a mandatory meeting on August 30, 2023; and Plaintiff advised Mr. Morris

that she may not be able to attend due to conflicts with her school schedule. Plaintiff was written up for not attending a meeting for which she had only 2 days' notice and for a prior conflict with her school schedule.

28. Plaintiff disagreed with this write-up and Defendant failed to follow their own meeting policy.

29. On or about September 4, 2023, Mr. Morris began inspecting the Plaintiff's work area at around 7:00-8:00 PM (that was not scheduled to be completed until 11:00 PM) and gave the Plaintiff another write-up for "improper cleaning".

30. Plaintiff disagreed with this write-up.

31. Plaintiff's White co-workers were not reprimanded or written up.

32. On September 5, 2023, while on her unpaid lunch break, Plaintiff was completing schoolwork on her laptop when she was approached by Mr. Morris and told she could not do schoolwork during her unpaid lunch break. She was then called to another meeting with Mr. Crum, where she was further advised that she could not do schoolwork during her unpaid break.

33. Prior to complaining of racial discrimination, Plaintiff did schoolwork during her unpaid breaks with no discipline or issue.

34. Plaintiff's White and non-Black co-workers engaged in the same actions, including:

a. Using their laptops or other devices during their scheduled breaks and were not disciplined (Plaintiff witnessed two front desk employees, an Indian female, Diane (LNU), and an Asian male (name unknown) doing schoolwork on the clock).

b. Missing meetings without discipline.

c. Improper cleanings.

35. During their unpaid lunch breaks, Plaintiff's coworkers would be outside smoking (marijuana included) and were not reprimanded or disciplined.

36. Plaintiff's White co-workers who made discriminatory comments towards her were not disciplined.

**Defendant's Policies Regarding Meetings**

37. When the Plaintiff was hired by the Defendant, during an initial meeting with Ms. Schmidt in human resources, she was told it was Defendant's policy to give one week's notice for any scheduled meetings.

38. The Defendant did not follow their own policy when they gave the Plaintiff two days' notice and wrote her up for having a prior commitment on August 30, 2023

**Plaintiff's Termination**

39. Following all of the above, Plaintiff was ultimately terminated on September 6, 2023, and was told the reason was for "improper cleaning".

40. Plaintiff was terminated approximately two weeks after filing her complaint of racial discrimination.

41. Plaintiff believes that her termination was because of her race, Black, and in retaliation for engaging in protected activity of complaining of racial discrimination.

42. Plaintiff's White co-workers who made discriminatory comments towards her were not disciplined or terminated.

## FIRST CLAIM FOR RELIEF

*(Retaliation in Violation of Section 1981 of the Civil Rights Act of 1866)*

43. The allegations contained in the foregoing paragraphs are incorporated by reference herein.

44. At all times pertinent to this action, Plaintiff, a Black female employee of Defendant, was protected by 42 U.S.C.A. § 1981, which prohibits an entity from discriminating against an individual with which it enjoys contractual rights and privileges, including but not limited to employment, because of their opposition to unlawful discrimination based on race or because of their participation in protected activity.

45. Nevertheless, throughout her employment with Defendant, Plaintiff was subjected to unwelcome race-based discrimination and harassment that was persistent and pervasive.

46. As set forth above, Plaintiff reported the unlawful race discrimination and harassment by the co-workers of the Defendant on a number of occasions to Defendant, including multiple times in August 2023.

47. Defendant wrongfully and intentionally retaliated against Plaintiff because of her complaints of and opposition to race discrimination in the workplace in violation of 42 U.S.C.A. § 1981, as follows:

a. Subjecting Plaintiff to a race-based hostile workplace, and failing to take reasonable and prompt corrective action to address and end the discrimination;

b. Reprimanding Plaintiff based on false charges and accusations without conducting a fair investigation; and

c. Terminating Plaintiff's employment.

48. As a proximate result of Defendant's acts of retaliation against Plaintiff in violation of Section 1981, Plaintiff suffered substantial damages, including loss of income and benefits and other economic losses; mental anguish and emotional distress; loss of reputation and quality of life, and other damages to be proven at trial.

49. Plaintiff is entitled to appropriate relief pursuant to 42 U.S.C.A. § 1981, including compensatory damages and reasonable attorneys' fees and costs for her representation pursuant to 42 U.S.C. § 1988.

**SECOND CLAIM FOR RELIEF**

*(Race Discrimination in Violation of Section 1981 of the Civil Rights Act of 1866)*

50. Plaintiff hereby incorporates the allegations of the foregoing paragraphs as if fully set forth herein.

51. Notwithstanding the at-will nature of Plaintiff's employment, 42 U.S.C. § 1981 provides that all persons shall have the same right to make and enforce contracts regardless of race. 42 U.S.C. § 1981 protects against race discrimination in employment relationships.

52. Plaintiff, a Black female, had an employment relationship with Defendant that constituted a contract within the meaning of 42 U.S.C. § 1981.

53. Defendants intentionally discriminated against Plaintiff on the basis of her race (Black) by terminating her employment.

54. Plaintiff's race was a but-for cause of Defendant's decision to terminate her.

55. As an actual, proximate, and foreseeable result of Defendant's actions, Plaintiff has suffered lost income and other fringe benefits, emotional distress,

humiliation, damage to her professional reputation, and other compensatory damages.

56. Defendant's actions were done maliciously, willfully, wantonly, and in a manner that demonstrates a reckless disregard for Plaintiff's rights. Defendants' officers, directors, and partners participated in and condoned this malicious, willful, wanton, and reckless conduct alleged above. As a result of Defendants' conduct, Plaintiff is entitled to recover punitive damages.

57. Plaintiff is entitled to back pay, front pay, fringe benefits, compensatory damages for emotional distress, and other pecuniary losses, punitive damages, pre-judgment, and post-judgment interest, attorneys' fees and costs, a tax-adjustment on any lump sum payment, and any other relief the Court deems just and proper.

**THIRD CLAIM FOR RELIEF**
*(Wrongful Discharge in Violation of Public Policy)*

58. Plaintiff incorporates the foregoing allegations as if fully set forth herein.

59. It is the public policy of North Carolina, as expressed in N.C. Gen. Stat. § 143-422.2, to protect and safeguard the right and opportunity of all persons to seek, obtain, and hold employment without discrimination or abridgment on account of

race, religion, color, national origin, age, sex, or handicap by employers that regularly employ 15 or more employees.

60. It is the public policy of North Carolina that an employee not be discharged or otherwise retaliated against for raising issues concerning the above public policies in the workplace, and for adhering to his or her duties as prescribed by both law and policy.

61. The Defendants wrongfully discharged Plaintiff in violation of North Carolina's public policies by discharging her on the basis of her race and for retaliation for her complaints of race discrimination based on those policies.

62. As a direct and proximate result of the wrongful termination of Plaintiff in violation of the public policy of North Carolina, Plaintiff has suffered substantial damages, including but not limited to loss of income and benefits, loss of professional reputation, loss of quality and enjoyment of life, mental anguish and emotional distress, and other damages to be proven at trial.

63. The Defendants' acts, as described above, were willful, wanton, and malicious, and evinced an intentional or reckless indifference to and disregard for the rights of Plaintiff. Aggravating circumstances concerning Defendants' conduct are provided in ¶¶ 13-42 above. Accordingly, Plaintiff is entitled to punitive damages in an amount to be determined by the jury in accordance with Chapter 1B of the North Carolina General Statutes.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment against the Defendants, jointly and severally, in her favor and award the following relief:

a. To be reinstated to her position or to a substantially equivalent position;

b. To recover of Defendant pay and restoration of all benefits;

c. To recover of Defendant compensatory damages in an amount to be determined by the jury in an amount in excess of $25,000;

d. To recover of Defendant punitive damages in an amount to be determined by the jury in an amount in excess of $25,000;

e. To recover the costs of this action and reasonable attorneys' fees pursuant to 42 U.S.C. § 1988;

f. To recover pre-judgment and post-judgment interest on all sums awarded;

g. That this Court enjoin Defendant from engaging in further violations of Section 1981 of the Civil Rights Act of 1866 and require appropriate corrective measures;

h. That this Court grant such other and further relief as the Court deems just and proper.

## REQUEST FOR JURY TRIAL

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury on all issues so triable.

This the 18th day of August, 2026.

DAGGETT SHULER,
ATTORNEYS AT LAW

/s/Benjamin P. Winikoff
Benjamin P. Winikoff (49625)
2140 Country Club Road
Winston-Salem, NC 27104
Phone: (336) 464-0862
Facsimile: (336) 464-0864
Email: **bwinikoff@daggettshulerlaw.com**
*Attorney for Plaintiff*